**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS,**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DANIEL GARZA** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:21-cv-585** |
| | § | |
| **PRINCIPLE AUTO GROUP, LLC** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Plaintiff **DANIEL GARZA**, and files this Plaintiff's Original Complaint and Jury Demand, complaining of **PRINCIPLE AUTO GROUP, LLC** hereinafter referred to as "Defendant" or "Principle", and would respectfully show unto the Court as follows:

### I.
### PARTIES

1.      Plaintiff, **DANIEL GARZA**, is a natural person who resides in San Antonio, Texas.

2.      Defendant **PRINCIPLE AUTO GROUP, LLC**, is a Texas LLC. Defendant may be served by serving its registered agent for service of process Abigail G. Kampmann, 1530 Treeline Park San Antonio, TX 78209.   A waiver of services has been requested.

### II.
### VENUE

3.      Plaintiff's claims arise under federal statute. This Court has jurisdiction over the claim because Plaintiff has asserted a claim arising under federal law, Title VII of the Civil Rights Act of 1964, as amended, codified under Title 42 U.S.C. Section 2000e *et. Seq,* the Americans with Disabilities Act, and the Family and Medical Leave Act.

4.      This Court has jurisdiction to hear the merits of Plaintiff's claims due to the federal question raised pursuant to the federal statutes cited above.

5.      Venue is proper in the Western District of Texas, San Antonio Division under 42 U.S.C. 2000-e(5)(3), because this is the district where the unlawful employment practices complained of were committed, and where the employment records relevant to that practice are maintained.

6.      As of the time of filing, damages are within the jurisdictional limits of the court.

**III.**
**JURY DEMAND**

7.      Plaintiff hereby tenders payment for and demands trial by jury.

**IV.**
**MISNOMER / MISIDENTIFICATION**

8.      In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

**V.**
**BACKGROUND FACTS**

9.      Mr. Garza began working for Defendant Principle Auto Group on May 13, 2010. Mr. Garza sold cars at Defendant's dealerships.

10.     In January 2019 a woman employee by the name of Brooke Smith started with the company as a Sales Consultant.   Since that time, she began an open relationship with the General Manager Andrew "Bud" Pratt. She received advantages and leads, did not work all recorded time,

and carried on a relationship openly with the General Manager, resulting in unfair discrimination against other male employees and subsequent retaliation after the employees complained.

11.     Shortly after Smith began working at the Principle Auto Group, she went on vacation to New York.   While there, she posted pictures of herself on social media consuming drugs. Coworkers that saw this complained to the service manager who brought it to the General Manager's attention, who then had a one on one meeting with her.

12.     When Michael Hernandez, the sales manager at the time, a 16 year employee and winner of the exemplar award that is only given to one person throughout the whole dealership per year, would reprimand Smith for not showing up on time, the Pratt would step in and defend her.

13.     Shortly after in March 2019, Pratt fired the sales manager and openly said the sales manager was "toxic".   Brooke told employees that "Bud said he fired him for her".   In June 2019, the Pratt invited all the managers and Brooke to have drinks after work.   On that day, Brooke confided to Mr. Garza that she and the General Manager had a relationship and she showed Garza text messages and numerous pictures of them together.   She later said that she and the General Manager were having a sexual relationship.

14.     Pratt would confront employees after complaints were made about Smith and would hold staff meetings where he would threaten to fire employees who had complained about Smith.

15.     When Garza complained to Pratt about what he perceived to be sexual harassment, based on a relationship between management and employee, the favoritism being shown to Brooke because of the sexual relationship, Garza was called into the office his job was threatened because he was being "toxic" and it was mentioned that the reason the previous manager was fired was

3

because he was "toxic". The retaliation for his complaints and opposition to sexual harassment then began.

16.     Soon after, Garza was not allowed to receive internet leads anymore, which is the major source of business in the auto industry. Without internet leads you essentially have no business. As a result, Garza's sales started to decline.

17.     Moreover, Brooke benefitted from her sexual relationship. If a salesperson sold a car and Brooke said she talked to them, even though she hadn't, the General Manager would take the deal from the salesperson that did all the work and give it to Brooke.

18.     In October 2019, a salesperson made a complaint to Human Resources about favoritism towards Brooke and her drug use.  HR immediately called Pratt and informed him about the complaints

19.     Pratt and his assistant Aaron interrogated the 4 salespeople that had been there the longest,   including Garza.   Garza was reminded again why the previous sales manager was fired for being "toxic."

20.     As a result, Mr. Garza later met with the assistant HR representative Zuliema and complained about his opposition to the sexual situation and favoritism being shown to Brooke by the General Manager.   Garza told her that he feared losing his job because he knew about the relationship between Pratt and Brooke.   He further informed HR that he had seen them kissing. Despite the fact that the relationship violated company policies, no actions were taken.

21.     Garza explained that he feared for his job and retaliation.   The HR rep recommended that he speak with the head of HR but Garza let her know he did not feel safe talking to her because he knew that it wouldn't be anonymous.   In fact, another employee, Ray,

complained to HR in February 20219.   HR informed the General Manager and the other employee

was also let go.   It is believed there was also a complaint made to the corporate office about the

sexual situation, discrimination and favoritism.

22.     In addition, in 2017 Mr. Garza diagnosed with end stage renal failure.   This

condition affects the major life activities of cleansing the circulatory system and eliminating waste.

As a result of his condition, he has had to take time off for appointments and treatment for his

condition, which displeased Pratt.   Garza also had to request intermittent FMLA leave because of

his condition.

23.     When Garza provided documentation regarding his FMLA to Zuliema in HR in

2020 she informed Garza that Pratt had told her that Garza did not need FMLA anymore.   Garza

told Zuliema that was not correct.

24.     On or about March 31, 2020, Mr. Garza and a co-worker Joel Lozano were

terminated.    Like Garza, Lozano had disabling medical conditions and had complained about the

favoritism Pratt showed to employees who accepted his sexual advances.

25.     Defendant claimed that the termination was a lay-off yet only terminated employees

who had disabilities and who had opposed Pratt's discriminatory treatment of male employees.


**VI.**
**DISCRIMINATION**
**BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

26.     Prior to his termination, Plaintiff faithfully served Defendant in his capacity as

employee and faithfully performed all duties expected of him. The acts committed by the agents,

servants and/or employees of the Defendant in discriminating against and wrongfully terminating

Plaintiff based on his sex all constitute violations of Title VII of the Civil Rights Act of 1964.

27.     As a result of Defendant's discrimination and unlawful retaliatory actions, the Plaintiff has suffered, and will continue to suffer actual damages in the form of lost wages, past and future, and lost employment benefits.

(1) Plaintiff is a member of a protected class based on sex.

(2) Plaintiff was qualified for his position;

(3) Plaintiff suffered adverse employment actions in that he received less favorable treatment than employees who engaged in sexual relationships with Defendant's management; and that he was terminated;

(4) The circumstances arising raise an inference of sex discrimination.

28.     Plaintiff subjected to different terms and conditions at his employment than a woman employee who was in a sexual relationship with the manager.   Plaintiff was treated less favorably under Defendant's policies and was denied income opportunities.

**VII.**
**RETALIATION BASED ON COMPLAINTS OF SEX DISCRIMINATION IN**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

29.     Prior to his termination, Plaintiff faithfully served Defendant in his capacity as employee and faithfully performed all duties expected of him. The acts committed by the agents, servants and/or employees of the Defendant in discriminating against and wrongfully terminating Plaintiff based on his complaints of sex discrimination all constitute violations of Title VII of the Civil Rights Act of 1964.

30.     As a result of Defendant's discrimination and unlawful retaliatory actions, the Plaintiff has suffered, and will continue to suffer actual damages in the form of lost wages, past and future, and lost employment benefits.

(1) Plaintiff engaged in protected conduct when he complained about favorable treatment given to a woman employee who had a sexual relationship with a

manager.

(2) Plaintiff was qualified for his position;

(3) Plaintiff suffered adverse employment actions in that he was terminated;

(4) The circumstances arising raise an inference of retaliation.

31.     Plaintiff and other employees who brought complaints about favorable treatment being given to a woman employee who was in a sexual relationship with their manager were terminated and given less favorable treatment including fewer income opportunities.

**VIII.**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

32.     The evidence will show that:

(1) Plaintiff was disabled (end stage renal failure) and/or perceived as disabled;

(2) Plaintiff was qualified for his position;

(3) Defendant interfered with Plaintiff's request for accommodations to see his doctors as needed to receive treatment.

(4) Shortly after requesting a renewal of his accommodation, Plaintiff and another disabled employee were terminated.

33.     Plaintiff's manager showed a negative attitude towards Plaintiff's requests for time off to receive treatment for his renal condition.   Additionally he tried to cancel Plaintiff's FMLA leave by alleging that Plaintiff had no need for it, despite that not being true.

**IX.**
**RETALIATION FOR REQUESTING ACCOMODATIONS FOR DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

34.     The evidence will show that:

7

(1) Plaintiff engaged in protected conduct when he brought complaints about disability discrimination.

(2) Plaintiff was qualified for his position;

(3) Defendant retaliated against Plaintiff by terminating his employment after he brought his complaints.

35.     Plaintiff's manager showed a negative attitude towards Plaintiff's requests for time off to receive treatment for his renal condition.   Additionally he tried to cancel Plaintiff's FMLA leave by alleging that Plaintiff had no need for it, despite that not being true.

## X.
## FMLA INTERFERENCE & RETALIATION, 29 U.S.C. 2601, *et. seq.*

36.     The acts committed by the agents, servants, and/ or employees of the Defendant interfered with Plaintiff's request for benefits under the FMLA.   Additionally, Defendant's employees retaliated against Plaintiff based on his request for having exercised or attempted to exercise any FMLA right constitute violations under 29 U.S.C. 2601, *et. seq.*

37.     Plaintiff's manager showed a negative attitude towards Plaintiff's requests for time off to receive treatment for his renal condition.   Additionally he tried to cancel Plaintiff's FMLA leave by alleging that Plaintiff had no need for it, despite that not being true.

## XI.
## RESPONDEAT SUPERIOR

38.     Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant company and were at all times acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

8

## XII.
## DAMAGES

39.     Plaintiff sustained the following damages as a result of the actions and/or omissions

of   Defendant described hereinabove:

> (1) All reasonable and necessary Attorneys' fees incurred by or on behalf of Plaintiff;

> (2) Back pay from the date that Plaintiff was terminated and interest on the back pay
> in an amount sufficient to compensate Plaintiff as the Court deems equitable;

> (3) All reasonable and necessary costs incurred in pursuit of this suit;

> (4) Expert fees as the Court deems appropriate;

> (5) Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

> (6) Pre and Post judgment interest as allowed by law and punitive damages;

> (7) Mental anguish in the past;

> (8) Mental anguish in the future; and

> (9) Loss of benefits, promotional opportunities, and job status.

## XIII.
## ADMINISTRATIVE FILINGS

40.     Plaintiff filed his Charge of Discrimination with the EEOC.   Thereafter, Plaintiff

received a notice of suit rights from the EEOC, giving Plaintiff notice of his right to sue Defendant

within 90 days of its receipt. Plaintiff timely files his lawsuit.

## XIV.
## ATTORNEY FEES

41.     Defendant's conduct as described in this petition and the resulting damage and loss

to Plaintiff has necessitated Plaintiff retaining counsel. Therefore, Plaintiff seeks all reasonable

and necessary attorney fees authorized under Title VII and the FMLA in this case which would

include at least the following:

    a.  Preparation and trial of the claim, in an amount the jury deems reasonable;

    b.  Post-trial, pre-appeal legal services, in an amount the jury deems reasonable; and

    c.  An appeal to the Court of Appeals, in an amount the jury deems reasonable; and

    d.  Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

**XV.**
**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendant be cited to appear and answer herein; that upon a final hearing hereof, a judgment be rendered for Plaintiff for damages set out above in an amount the jury deems reasonable under the circumstances, along with costs of court, and both post and prejudgment interest as allowed by law, attorneys' fees and for such other and further relief to which Plaintiff may be justly entitled.

                **Respectfully Submitted,**

                **BY:**  */s/ Alan Braun*
                        **ADAM PONCIO**
                        **STATE BAR NO. 16109800**
                        [salaw@msn.com](mailto:salaw@msn.com)
                        **ALAN BRAUN**
                        **STATE BAR NO. 24054488**
                        [abraun@ponciolw.com](mailto:abraun@ponciolw.com)

                        **PONCIO LAW OFFICES**
                        **A Professional Corporation**
                        **5410 Fredericksburg Road, Suite 109**
                        **San Antonio, Texas 78229-3550**
                        **Telephone:(210) 212-7979**
                        **Facsimile:(210) 212-5880**

10

**ATTORNEYS FOR PLAINTIFF**